

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1323-13

**EDWARD CHIARINI, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. JOHNSON, J., concurred.

Appellant, the owner of a condominium unit, carried a handgun in the common area of the condominium complex. Did he violate the "unlawful carrying weapons" (UCW) statute,[1] which generally prohibits the carrying of a handgun but does not prohibit carrying a handgun on "the person's own premises?" We hold that he did not violate the UCW statute, and we affirm the judgment of the court of appeals.

### I. BACKGROUND

---

[1] TEX. PENAL CODE 46.02.

On January 28, 2011, Dallas police officers responded to a drug-house call at a condominium complex. When they arrived, appellant and the president of the homeowners' association walked out to meet them in the courtyard of the complex. Appellant had a handgun in a holster on his leg. When asked why he had the handgun, appellant replied that he does "walk-thrus" at the complex.

Appellant was the owner of one of the units in the complex. The condominium declaration defined ownership in relevant part as follows:

> 3.1 OWNERSHIP. A Condominium Unit will be a fee simple estate and may be held and owned by any persons, firm, corporation or other entity singularly, as joint tenants, as tenants in common, or in any real property tenancy relationship recognized under the law of the state of Texas.
>
> 3.2 PARTITION. The Common Elements (both General and Limited) shall be owned in common by all of the Owners of the Condominium Units and shall remain undivided . . . .
>
> 3.3 EXCLUSIVENESS OF OWNERSHIP. Each Owner shall be entitled to exclusive ownership and possession of his Unit. Each Owner may use the Common Elements in accordance with the purpose for which they are intended, without hindering or encroaching upon the lawful rights of the other Owners.[2]

The complex had 180 units, and the president of the homeowners' association testified that appellant owned a 1/180th undivided interest in the common area. Appellant was convicted of unlawfully carrying a weapon under Texas Penal Code § 46.02.

On appeal, appellant challenged the legal sufficiency of the evidence. He contended that he did not violate the statute because the common area of the condominium complex qualified as his "own premises." The court of appeals agreed and rendered a judgment of acquittal.[3]

---

[2] The condominium declaration was executed on November 25, 1981. Because the declaration was executed before January 1, 1994, the "Condominium Act" (Chapter 81) rather than the "Uniform Condominium Act" (Chapter 82) applies. *See* TEX. PROP. CODE § 82.002(a).

[3] *Chiarini v. State*, 407 S.W.3d 922 (Tex. App.–Dallas 2013).

## II. ANALYSIS

### A. The Statute and Rules of Construction

The UCW statute, Texas Penal Code § 46.02, provides in relevant part:

> A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not . . . on the person's own premises or premises under the person's control . . . . For the purpose of this section, "premises" includes real property and a recreational vehicle that is being used as living quarters, regardless of whether that use is temporary or permanent.[4]

The question is, simply, whether the common area of the condominium complex constitutes appellant's "own premises" under the statute by virtue of his 1/180th undivided interest. If the common area constitutes appellant's "own premises," then the UCW statute does not prohibit him from carrying a handgun on that property.

In construing a statute, we give effect to its literal text unless the meaning of the statute is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[5] If the statute is ambiguous or leads to absurd results, then we may consult extratextual factors, such as the legislative history.[6] In addition to legislative history, extratextual factors include, but are not limited to, the object sought to be obtained, common law or former statutory provisions, and the consequences of a particular construction.[7]

---

[4] Tex. Penal Code § 46.02(a)(1), (a-2). The portions of the UCW statute that are at issue here have remained unchanged since September 1, 2007.

[5] *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

[6] *Id.*

[7] *Nava v. State*, 415 S.W.3d 289, 306 (Tex. Crim. App. 2013); *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004).

## B. "Premises"

Traditionally, the word "premises" in the UCW statute has been broadly construed to include both residential and business property.[8] Any type of real property can qualify as premises, so long as it is the person's own property or under the person's control. The UCW statute allows a person to carry a handgun on any real property that is his own property or that he controls, whether it be a residence, a business, or even a vacant lot.

## C. "Own"

### 1. *Plain Meaning*

The word "own" is used here as an adjective, and, as such, it can be defined as "belonging to oneself."[9] Property can be said to "belong" to one if that person has an ownership interest in it. Property, especially real property, can easily have multiple owners, so it would be odd to interpret the adjective "own" with respect to property as referring to exclusive ownership. Two sisters might

---

[8] *See Moosani v. State*, 866 S.W.2d 736, 738 (Tex. App.–Houston [14th Dist.] 1993), *aff'd and opinion adopted by*, 914 S.W.2d 569 (Tex. Crim. App. 1995) ("There is a statutory exception for a person carrying a weapon on his own premises or premises under his control. [Citation omitted] Case law has established that a person may carry a pistol from his place of business to his home or from his home to his place of business provided (1) the weapon is not habitually carried between those places, (2) the purpose for carrying the weapon is legitimate, e.g., protection when carrying a large sum of money, (3) the route taken is a practical one, and (4) the journey proceeds without undue delay or unnecessary or unreasonable deviation."); *Inzer v. State*, 601 S.W.2d 367, 368 (Tex. Crim. App. [Panel Op.] 1980) (referring to "statutory defenses that one may carry a weapon at home, on one's business premises, or while traveling" and stating that these "statutory defenses have remained intact since their passage in the latter part of the 19th Century"); *Evers v. State*, 576 S.W.2d 46, 51 (Tex. Crim. App. 1978), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (explaining that "control of the business premises is essential in order to justify carrying a pistol to the business premises" and citing predecessor language to present statute).

[9] WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 843 (1987). *See also* BLACK'S LAW DICTIONARY 996 (5th ed. 1979) (definition of "own" includes, "To have a good legal title; to hold as property.").

own and live at a house together, and each would legitimately say that the house is her own premises. Or two partners could own a business and the land it sits on, and each would legitimately call the business premises his own. It would be inaccurate to say that one of the sisters could legally possess a handgun in the home only if the home were owned solely by her, or that one partner could legally possess a handgun at his place of business only if he owned the business alone instead of sharing ownership with a partner.

While the present case involves 180 owners rather than two, that numerical difference cannot be a principled basis for distinguishing the present case from the hypotheticals given above. On what basis, for example, would we say that a person may carry a gun on the premises if he is one of five owners but not if he is one of a hundred?

The condominium declaration in this case states that the common elements of the condominium complex are "owned in common" by all of the condominium unit owners. This phrase conforms to the requirements of the Condominium Act, which provides, "An owner of an apartment in a condominium regime shares ownership of the regime's common elements with the other apartment owners."[10] The owner of a condominium unit is liable for his pro rata share of expenses for maintaining the common areas[11] and a pro rata share of any tort liability arising from the common areas.[12] The Texas Supreme Court has explained that, "[i]n enacting the Condominium Act, the legislature "intended to create 'a new method of property ownership,'" consisting of "the fee simple ownership of an apartment or unit in a condominium project and a tenancy in common with other

---

[10] TEX. PROP. CODE § 81.107.

[11] TEX. PROP. CODE § 81.204.

[12] *Dutcher v. Owens*, 647 S.W.2d 948, 950 (Tex. 1983).

co-owners in the common elements."[13]  "Tenancy in common" is a legal phrase that describes the most prevalent form of concurrent ownership of real estate other than by spouses.[14]  The plain meaning of the phrase "the person's own premises" would, therefore, seem to encompass appellant's undivided ownership interest of the common area of the condominium complex.

The State argues that the common area does not constitute appellant's own premises because he does not control the area and because he would not be jointly and severally liable on tort claims arising from such an area.  As explained above, the UCW statute exempts from its reach a "person's own premises *or* premises under the person's control."  If the legislature had wished to limit the exemption to premises that a person had legal control over, it could have omitted the phrase "person's own premises" entirely.  Moreover, appellant had at least some indirect control over the common area: he could vote for homeowners-association board members, who could act to maintain the common area.  The law restricts the ability to partition or sell an interest in the common area of a condominium complex,[15] but those restrictions are designed to protect the other owners, a theme

---

[13]  *Dutcher*, 647 S.W.2d at 949.

[14]  *See* John E. Cribbet and Corwin W. Johnson, PROPERTY: CASES AND MATERIALS, 5th ed., 337, 347 (December 1984) (explaining, "Except in special circumstances which will be considered hereafter, concurrent owners are termed 'tenants in common,'" and mentioning, among other special circumstances, "community property," of importance in eight states); *Harrell v. Harrell*, 692 S.W.2d 876 (Tex. 1985) ("It has long been the rule in Texas that community property not partitioned or divided upon divorce is held by the former spouses as tenants in common or joint owners."); *Dahlberg v. Holden*, 150 Tex. 179, 186, 238 S.W.2d 699, 703 (1951) ("Ordinarily, when one tenant in common brings a suit to recover land, in proving his own title, he proves that of his cotenants, and thereby shows that the defendant is not entitled to possession."); *Bruni v. Vidaurri*, 140 Tex. 138, 146, 166 S.W.2d 81, 86 (1942) (person, "by accepting and claiming under a deed which conveyed to him interests owned by some of the cotenants, became a tenant in common with the other co-owners.").

[15]  TEX. PROP. CODE §§ 81.108, 81.109.

in the law when tenants in common are involved.[16]

And though it is true that condominium owners are not jointly and severally liable in the tort context for injuries arising out of the common area, the imposition of joint and several liability is merely a "judicially created vehicle[] for enforcing remedies for wrongs committed" and is "[j]ustified on policy grounds."[17] The Texas Supreme Court's policy decision not to use such a vehicle in this context[18] does not detract from the fact that the condominium-unit owner is a co-owner of the common area.

The State also relies upon cases that involve the possession of a handgun in the common area of an apartment complex, or of a condominium complex where the defendant was a renter.[19] The court of appeals in the present case found those cases to be distinguishable because none involved an owner of a condominium unit with an undivided legal interest in the common areas of the

---

[16] *See Sayers v. Pyland*, 139 Tex. 57, 64, 161 S.W.2d 769, 773 (1942) ("It is likewise well settled that, while one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights and remedies of the other joint owners. He can acquire no such rights as will prejudice or in anywise interfere with the rights of the other tenants in common."); Cribbet and Johnson at 338 ("each cotenant has a right of possession referable to the whole, coupled with a duty not to interfere with another' cotenant's co-extensive right"); *id.* at 337 ("If harmony is lacking and the opponents cannot agree upon truce or compromise, ordinarily the most attractive alternative is to compel termination of the cotenancy relationship through a judicial process termed 'partition,' but as subsequent materials will show, this solution is not always available.").

[17] *Dutcher*, 647 S.W.2d at 951.

[18] *See id.*

[19] *Bryant v. State*, 508 S.W.2d 103, 103-04 (Tex. Crim. App. 1974) (apartment complex); *Wilson v. State*, 418 S.W.2d 687, 687-88 (Tex. Crim. App. 1967) (op. on original submission and op. on appellant's motion for rehearing) (same); *Angell v. State*, No. 05-05-00707-CR, 2006 Tex. App. LEXIS 10134, *4-6 (Tex. App.–Dallas November 27, 2006, no pet.) (not designated for publication) (renter at condominium complex); *Curlin v. State*, 2000 Tex. App. LEXIS 2513 (Tex. App.–Dallas April 18, 2000, no pet.) (not designated for publication) (apartment complex).

complex.[20] We agree with the court of appeals. All four cases cited by the State involve people who were renters, not owners. The cases are inapplicable.[21] We conclude that, because appellant was a co-owner of the common area, the common area was his "own" premises under the literal text of the statute.

### 2. *Absurd Results / Extratextual Factors*

The State contends that the language in § 46.02 produces absurd results when read together with § 46.035, the provision that applies to persons who are licensed to carry concealed handguns. The State points to the fact that the concealed-handgun statute prohibits persons holding licenses from displaying a handgun "in plain view of another person in a public place."[22] The State argues that a construction of § 46.02 that allows a person to carry a handgun on any property in which he has an ownership interest would in effect give unlicensed individuals the right to openly carry a handgun in some public places where a licensed individual could not.

We point out that the State's complaint is not that the literal text of § 46.02 produces absurd results by itself. The State's absurd-result complaint is based on reading § 46.02 in conjunction with §46.035. But a comparison of the statutes makes us wary of any effort to interpret § 46.02 to

---

[20] *Chiarini*, 407 S.W.3d at 926.

[21] Neither of the court of appeals opinions are published, so they have no precedential value, *Campbell v. State*, 426 S.W.3d 780, 783 n.2 (Tex. Crim. App. 2014), and in any event, they are not binding upon us. *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014). Further, we disagree with the State's contention that appellant was "[m]uch like the apartment dweller in *Curlin*." Not only was Curlin a renter of an apartment, rather than the owner of a condominium unit, but he was convicted under a different statute, felon in possession of a firearm, which contains different language than that found in § 46.02 and arguably serves a different purpose. *See Curlin*, 2000 Tex. App. LEXIS 2513, *5-7 (observing that the unlawful-possession-of-a-firearm-by-a-felon statute permits possession of a firearm only "within the confines" of the felon's residence).

[22] TEX. PENAL CODE § 46.035(a).

conform to § 46.035. In 2011, when appellant was arrested for carrying a handgun, § 46.035(a) did not contain the "public place" language that it contains today; rather, that provision simply made it an offense if a person licensed to carry a concealed handgun "intentionally fail[ed] to conceal the handgun."[23] That language could be read to prohibit a license holder from openly carrying a handgun inside his own house, but no one would contend that § 46.02 would prohibit such conduct for an unlicensed handgun owner. And even under the present version of § 46.035, possession by a license holder of a handgun in a correctional facility would be a higher degree offense than possession would be for an unlicensed person under § 46.02.[24] Moreover, § 46.035 applies only to handguns, but § 46.02(a), under which appellant was charged, applies to a "handgun, illegal knife, or club."[25]

Further, the State assumes that any absurd result produced by reading the statutes together must be remedied by adjusting the interpretation of § 46.02. But it could just as easily be argued that it is the interpretation of § 46.035 that should be adjusted.[26]

Even assuming that a reading of the two statutes together produces an absurd result that authorizes us to look at legislative history, the State's legislative history argument is unpersuasive. The State contends that the legislative history to the 2007 amendments to § 46.02 makes clear that

---

[23] TEX. PENAL CODE § 46.035(a) (West 2010).

[24] *Compare* TEX. PENAL CODE § 46.02(b), (c) (Class A misdemeanor, except third-degree felony if possessed on premises licensed to sell alcoholic beverages) *with id.* § 46.035(b)(3), (g) (third-degree felony if possessed on the premises of a correctional facility).

[25] *Compare id.* § 46.02(a) *with id.* § 46.035(a) - (d).

[26] Penal Code § 46.035 provides, as one element of the offense, that the person is carrying the handgun "under the authority of Subchapter H, Chapter 411, Government Code." *See id.* § 46.035(a) - (d). The argument could be made that a license holder who possesses or displays a handgun under circumstances in which an unlicensed individual would be authorized to possess or display a handgun is not acting "under the authority of Subchapter H."

the legislature intended to afford protection from prosecution for motorists lawfully carrying weapons. While that appears to have been one of the purposes of the amendments, we do not see how that affects the interpretation of the statute. The change to which the State refers was to a separate portion of § 46.02 that is not at issue here.[27] Moreover, the bill analysis includes the following passage, which is quoted in the State's brief: "C.S.H.B. 1815 would make it clear that a person has a right to carry a handgun, club or certain knives on the person's own premises or premises under his control."[28]

The State also contends that the court of appeals's position "fails to consider the facts of this case," and the State concludes, "It is unreasonable to believe that the Legislature envisioned and intentionally authorized individuals in Respondent's position to openly brandish weapons on any piece of property in which they had a partial ownership interest, but no actual control." The State points to the facts that it believes the court of appeals failed to consider as, "Respondent patrolled the common areas of the condominium complex openly carrying a .40 caliber handgun in a thigh rig that resembled something worn in 'Battlestar Galactica.'" If the State's contention is that the court of appeals failed to consider the potentially disruptive aspects of appellant's conduct, the State errs in that regard. The court of appeals pointed to the disorderly conduct statute as possibly applying to the situation.[29] If the State's contention is that it is self-evident that the legislature intended to

---

[27] *See* TEX. PENAL CODE § 46.02(a)(2) (exempting from the UCW offense an actor's possession of a weapon "inside of or directly en route to a motor vehicle that is owned by the person or under the person's control.")

[28] Texas House Comm. on Law Enforcement, Bill Analysis, H.B. 1815, 80th Leg., R.S. (2005).

[29] *Chiarini*, 407 S.W.3d at 926-27 (citing and quoting TEX. PENAL CODE § 42.01(a)(8) (West Supp. 2012) ("A person commits [disorderly conduct] if he intentionally or knowingly: . . . (8)

punish under § 46.02 the act presented here, we must disagree.

The State also contends that upholding the lower court's interpretation would mean that "persons openly carrying handguns on 'real property' would no longer be subject to arrest for unlawfully carrying a weapon, unless the police officer had dispositive information that the individual did not own or control the premises." It is true that a police officer would need probable cause to arrest someone for violating the statute, but it is possible that an officer could stop someone and conduct an investigative detention on reasonable suspicion and develop probable cause during that detention.[30] The State argues that officers would have a difficult time articulating reasonable suspicion to stop and probable cause to arrest, but "reasonable suspicion" is a relatively low level of suspicion that involves articulable facts showing "some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime."[31] And even if the officer did not yet possess facts giving rise to reasonable suspicion, he could attempt to initiate a consensual encounter by approaching the individual in question and asking whether he had an ownership interest in the property.[32] The individual's response might yield reasonable suspicion to stop or probable cause to arrest. Furthermore, depending on the circumstances, an officer might be able to develop reasonable

---

displays a firearm or other deadly weapon in a public place in a manner calculated to alarm . . . .").

[30] *See Terry v. Ohio*, 392 U.S. 1 (1968).

[31] *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (emphasis omitted).

[32] *Wade v. State*, 422 S.W.3d 661, 667 & n.17 (Tex. Crim. App. 2013) ("Police officers are as free as any other citizen to approach citizens to ask for information or cooperation. Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures.").

suspicion or probable cause regarding the violation of a different statute, such as the disorderly-conduct statute mentioned by the court of appeals.

We do not agree with the State that the plain language of the statute leads to absurd results, and in any event, we do not agree that extratextual factors support the State's interpretation of § 46.02. We conclude that appellant's undivided ownership interest in the common area of the condominium complex made the common area appellant's "own premises" under the UCW statute. Because appellant was carrying a handgun on his own premises, he did not violate § 46.02.

We affirm the judgment of the court of appeals.

Delivered: September 17, 2014
Publish