

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00426-CR

JOSE MANUEL BARRIOS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2798, Honorable Gordon H. Green, Presiding

December 2, 2014

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jose Manuel Barrios, entered a plea of guilty to the offense of driving while intoxicated (DWI),[1] third or more,[2] and, pursuant to a plea agreement following a denial of his motion to suppress, was sentenced to serve 12 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant appeals contending that the trial court erred in overruling his motion to suppress

---

[1] See TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2014).

[2] See id. § 49.09(b)(2) (West Supp. 2014).

evidence collected as a result of a warrantless search because: 1) initially, the police officer lacked reasonable suspicion to detain him; and 2) the officer lacked probable cause to then arrest him for the offense of DWI. Further, appellant contends that the trial court erred in denying his motion to suppress the search warrant issued to obtain a blood specimen because the issuing magistrate is not an attorney licensed to practice law by the State of Texas. We will affirm the trial court's ruling.

## Factual and Procedural Background

On June 8, 2013, Officer Leonardo Aviles was on duty for the Muleshoe Police Department and, as a result of a complaint made regarding appellant, went to appellant's home to investigate. Upon finding appellant at his residence, Aviles spoke to him about the complaint and observed that appellant had been drinking. As a result of his observations and appellant's admissions that he had been drinking, Aviles advised appellant that he should not be driving any more that evening.

Approximately 30 minutes after Aviles's first interaction with appellant, Aviles responded to a call from another individual, Chuck Fabela, complaining about appellant driving by his residence while yelling and making threats directed at Fabela and his family. After receiving the complaint from Fabela, Aviles drove to appellant's residence. Appellant was not at home. Aviles chose to park near appellant's residence and wait for him. Soon thereafter, Aviles observed a vehicle stop in front of Fabela's residence. According to Aviles, he observed or heard appellant honking his horn and saying something toward the Fabela residence.

2

Aviles then attempted to stop appellant, who drove around Aviles's vehicle and proceeded to his home. Aviles followed appellant to his residence and ultimately arrested him for DWI. No field sobriety tests (FSTs) were administered to appellant at the scene. Upon arrival at the Bailey County jail, appellant stated he was physically unable to perform any FSTs. Thereafter, appellant agreed to take an intoxilyzer breath test. However, when the test was administered, appellant appeared to be blocking the mouthpiece with his tongue. Based upon appellant's refusal to submit to a breath test, a search warrant affidavit to obtain a specimen of appellant's blood was prepared.

The search warrant affidavit was presented to Justice of the Peace Debra Redwine. The record reflects that Redwine is not a licensed attorney in the State of Texas. Redwine reviewed the affidavit and signed the search warrant. A blood specimen was taken from appellant.

After appellant was charged by indictment with the offense of DWI, third or more, his attorney filed a motion to suppress the evidence. Appellant sought to suppress both his initial detention and subsequent arrest, claiming that Aviles did not have reasonable suspicion to detain appellant and that, after appellant's detention, Aviles lacked probable cause to arrest him for DWI. Appellant then filed an amended motion to suppress contending that, in addition to the other matters alleged, the search warrant was invalid because the reviewing magistrate, Redwine, is not a licensed attorney. The trial court overruled the motion to suppress.

After the trial court's ruling on the suppression issues, appellant entered into a plea agreement and pleaded guilty to the offense of DWI, third or more. Pursuant to the

3

plea agreement, appellant was sentenced to 12 years confinement in the ID-TDCJ. Appellant now appeals based upon the trial court's denial of the amended motion to suppress. We will affirm the trial court's rulings.

Standard of Review

A trial court's denial of a motion to suppress is reviewed under a bifurcated review process. *See Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* A trial court's application of the law to the facts is reviewed *de novo. Id.*

In our case, we will initially review the trial court's rulings on the questions of reasonable suspicion to detain appellant and probable cause to arrest appellant under the bifurcated standard of review. *Id.* We give almost total deference to the trial court on questions of credibility and historical fact. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* When, as here, the trial court makes explicit findings of fact, we are to determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Priddy,* 321 S.W.3d 82, 86 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *State v. Kelly,* 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006)).

As to the search warrant issue, we note that the fact that Redwine is not a licensed attorney is not contested. Accordingly, the only question before the Court is whether the trial court applied the law correctly. Thus, we review the denial of

4

appellant's motion to suppress the evidence obtained through the search warrant *de novo. See Turrubiate,* 399 S.W.3d at 150.

Reasonable Suspicion and Probable Cause

Appellant's first issue contends that Aviles lacked reasonable suspicion to initially detain appellant. Further, if Aviles had reasonable suspicion to detain appellant, he did not develop any probable cause to believe that appellant had committed the offense of DWI.

Applicable Law

The Fourth Amendment to the United States Constitution, along with Article I, Section 9, of the Texas Constitution protects individuals from unreasonable searches and seizures. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). Article 1.06 of the Code of Criminal Procedure provides that the people shall be secure from all unreasonable seizures or searches. TEX. CODE OF CRIM. PROC. ANN. art. 1.06 (West 2005).[3] Thus, under Texas law, searches and seizures must be reasonable.

"A law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (quoting *Hiibel v. Sixth Judicial District Court of Nev.*, 542 U.S. 177, 185, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004)). "An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a

---

[3] Further reference to the Texas Code of Criminal Procedure will be by reference to "art. ___," or "article ____."

traffic stop." *State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). Thus, a traffic stop based upon a reasonable suspicion that some crime was, or is about to be, committed does not violate Texas law. *See id.* An officer's determination about reasonable suspicion must be supported by "specific and articulable facts." *See id.* at 568-69 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). In determining whether the officer had specific and articulable facts, a reviewing court uses an objective standard. *See id.* at 569. That is, considering only the information actually available to the officer at the moment of the seizure or search, would a man of reasonable caution be warranted to believe that the action taken was appropriate. *See id.*

Under article 14.01(b), "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Art. 14.01(b) (West 2005). Probable cause for a warrantless arrest under article 14.01(b), "may be based on [an officer's] prior knowledge and personal observations . . . . [A]n officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination." *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). Thus, all of the information to support probable cause does not have to be within an officer's personal knowledge. *Id.* The ultimate question under article 14.01(b) is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."

6

*Id.* (citing *Steelman v. State,* 93 S.W.3d 102, 107 (Tex. Crim. App. 2002), as quoting *Beverly*, 792 S.W.2d at 105).

Analysis

We begin our analysis with the findings of fact entered by the trial court, after hearing the testimony at the pre-trial hearing on appellant's motion and amended motion to suppress the evidence. The trial court made the following findings of fact that are relevant to our inquiry:

1. [Appellant] was arrested on or about the 8th day of June, 2013, . . . for the offense of [DWI] by Leonardo Aviles.

20. On June 8, 2013, [Aviles] was investigating allegations that [appellant] threatened Chuck Fabela, a person the officer knew had allegedly assaulted the [appellant] prior to this investigaton.

21. On June 8, 2013, [Aviles] visited the residence of the [appellant] at approximately 9:00 p.m. During the visit:

   A. the officer smelled a strong odor of alcoholic beverage on the [appellant's] breath and observed that his eyes were red;
   B. the [appellant] gave consent to search his vehicle;
   C. during the search of the vehicle, the officer saw an open can of beer in the console which was cold to the touch;
   D. the officer saw seven other cans of beer in the passenger seat; and,
   E. the officer instructed the [appellant] to not drive his vehicle.

22. About one hour later, [Aviles] observed [appellant] operating his vehicle on a public road and heard the [appellant] honk his horn at a driveway located at 403 West Boston, Muleshoe, Texas, which was not the residence of the [appellant] and which is a violation of the Texas Transportation Code as well as a breach of the peace.

23. [Aviles] attempted to stop the [appellant's] vehicle, but the [appellant] drove away and parked in his driveway. When the officer made contact with the [appellant], the [appellant] smelled of alcohol and his eyes were red. Also [Aviles] observed that only six cans of beer remained in the vehicle.

The trial court also made the following conclusion of law that is relevant to our analysis:

> 5. The credibility of the affiant is sufficiently established in the affidavit for the search warrant.

The record reveals that the affiant for the search warrant to draw a specimen of appellant's blood was Aviles. Further, a review of the affidavit reveals that it recites the events that led up to and resulted in the ultimate arrest of appellant for the offense of DWI.

During the pre-trial hearing, Aviles was the only witness to provide testimony. Aviles's testimony can be characterized as somewhat contradictory and, at times, confusing. His lack of knowledge of the definitions for intoxication and admission that he did not perform any FSTs on appellant prior to arresting him for DWI can be seen as problematic. However, the findings of fact filed by the trial court are supported by the record. *See Priddy,* 321 S.W.3d at 86.

Specifically, appellant had two separate interactions with Aviles on the night in question. During the first encounter, appellant met with Aviles outside appellant's home. Aviles testified that, during this first encounter, he thought appellant appeared unstable and smelled like alcohol. Further, the record reflects that appellant admitted he had been drinking beer. While conducting a consent search related to the incident he was called about, Aviles found that appellant had seven unopened beers in his car and an eighth beer that was opened. Aviles concluded the first encounter with appellant by advising him not to be driving anymore that evening.

8

Approximately 30 minutes later, Aviles received a second call concerning appellant. The second call was from Chuck Fabela, who advised that appellant was driving by Fabela's home yelling threats to kill him and his family. In response to this report, Aviles went back to appellant's home but did not find appellant there. Aviles then pulled down the street, turned his patrol vehicle around, parked and waited. Within a matter of minutes, Aviles observed a vehicle approaching his direction. However, the vehicle stopped in front of the Fabela home. Aviles drove toward Fabela's residence where he saw a white four-door car parked in front of the driveway of the Fabela residence. Further, he observed appellant to be the sole occupant and driver. Aviles testified on direct examination that he observed and heard appellant honk his horn and shout toward the residence. According to Aviles, such an action would have been a violation of the Texas Transportation Code. Specifically, parking across the driveway violated section 545.302, and honking the horn violated section 547.501. *See* TEX. TRANSP. CODE ANN. §§ 545.302(b)(1), 547.501(c) (West 2011).

Aviles testified that, after observing appellant's activity in front of the Fabela residence, he turned on his emergency lights and attempted to make a traffic stop. However, appellant did not stop but instead drove down the street a short distance to his residence. Aviles followed appellant and eventually confronted him in the driveway of appellant's home.

According to Aviles's testimony on direct examination, when he approached appellant in front of his home, Aviles could smell alcohol on his breath, appellant's eyes were red, and appellant had difficulty standing up straight. Prior to detaining or arresting appellant, Aviles looked into appellant's car and saw that there were only six

9

cans of beer inside. At this point in time, appellant was placed in handcuffs and arrested.

When asked why he did not have appellant perform any FSTs at the scene of the arrest, Aviles stated that appellant said he did not want to do any. After taking appellant to the jail, he was asked to perform FSTs but he refused, claiming to have a sore back and something wrong with his legs. At the jail, appellant was offered and agreed to take an intoxilyzer test. However, when the test was administered, appellant refused to properly complete the test. According to Aviles, appellant was blocking the breath tube with his tongue.

The evidence deduced at the pre-trial hearing shows that appellant was stopped for a violation of the Texas Transportation Code. Such a violation supports the arrest of appellant without a warrant. *See* TEX. TRANSP. CODE ANN. § 543.001 (West 2011). Further, the temporary detention of appellant was supported by his threatening the residents of the Fabela home. Aviles had information from Fabela that appellant had been shouting threats toward Fabela and his family. Later, Aviles observed appellant parked across Fabela's driveway mouthing something toward the residence. Based upon his prior conversation with Fabela, Aviles was warranted in detaining appellant to investigate his reasonable suspicion that appellant was committing the offenses of disorderly conduct and terroristic threat. *See* TEX. PENAL CODE ANN. §§ 22.07 (West 2011), 42.01 (West Supp. 2014). Aviles, as demonstrated in the record, had specific and articulable facts upon which to base a detention of appellant. *See Duran*, 396 S.W.3d at 568-69. The record before us clearly demonstrates support for the trial

10

court's determination that Aviles had probable cause to detain appellant.[4]  *See*

*Gutierrez v. State,* 419 S.W.3d 547, 551 (Tex. App.—San Antonio 2013, no pet.)

(holding that probable cause exists when the officer has a reasonable belief that, based

on facts and circumstances within the officer's personal knowledge, the individual

committed or will soon commit an offense.)  Here, the officer observed appellant commit

at least two traffic offenses.  This gave him the requisite reasonable suspicion to detain

him, as found by the trial court.

As to the question of probable cause to arrest appellant for the offense of DWI,

the record again supports the trial court's determination that such probable cause

existed.  Aviles had two separate opportunities to observe appellant.  On both

occasions, Aviles noted signs of intoxication, strong odor of alcohol, and red eyes.

Additionally, appellant admitted that he had been drinking beer prior to his first

encounter with Aviles.  At the time of the first encounter, Aviles noted one opened and

seven unopened beers in appellant's car.  At the second encounter, there were only six

unopened beers in appellant's vehicle.  This supports the inference that appellant

continued to drink after his initial encounter with Aviles.  Further, Aviles testified that,

prior to placing handcuffs on appellant, he noted that appellant appeared to be unsteady

on his feet.

To these observations, we add the actions of appellant.  First, appellant knew he

had already had one encounter with law enforcement after he had been drinking and

had been advised to not drive anymore that evening.  Yet, appellant ignored this

---

[4] While we agree that there was probable cause to detain appellant, we point out that all that is required for the temporary detention of one who is suspected of committing an offense is reasonable suspicion.  *See Kerwick*, 393 S.W.3d at 273.

warning and drove. This can be seen as a lack of appreciation of his existing circumstances and diminished judgment. Moreover, there is the commission of two offenses in the presence of an officer, one of which might be considered the more serious offense of terroristic threat. After, being observed committing these offenses, appellant ignored Aviles's emergency lights and drove around Aviles's car to return to his home. Again, this is demonstrative of a lack of judgment which can be explained by ingestion of alcohol. When the actions of appellant are reviewed objectively, in a totality of the circumstances review, we cannot say that a reasonable and prudent officer would not have come to the same conclusion that Aviles did, that is, that appellant committed the offense of DWI. *See Woodard*, 341 S.W.3d at 412.

A review of appellant's brief reveals that appellant's contentions are centered on Aviles's testimony upon cross-examination. First, Aviles was not sure about many of the legal principles involved in arresting an individual for the offense of DWI. Next, Aviles did, in fact, contradict some of the testimony that he had given on direct examination. Finally, according to appellant's theory, the lack of FSTs and the content of the recording of the scene in front of Fabela's home and at the time of appellant's arrest reveal that Aviles did not have probable cause to arrest, rather, that Aviles arrested based upon a preconceived thought that appellant was intoxicated. Whatever Aviles's subjective belief was is not the test, rather the test is an objective test based upon the totality of the circumstances. *See Maryland v. Pringle,* 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

Our review of the record demonstrates, to our satisfaction, that nearly all of appellant's factual contentions may be classified as credibility issues. A reviewing

12

court, such as ours, is directed to give great discretion to the trial court's determination of the historical facts. *See Valtierra*, 310 S.W.3d at 447. We are reminded that the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* Finally, the trial court, in its conclusion of law number 5, found that the affiant for the search warrant was credible. The record shows that the affiant for the search warrant was Aviles. The record also shows that the facts put forth in the search warrant affidavit mirror nearly all of the facts Aviles testified to at the pre-trial hearing. We are left with but one conclusion, the trial court found Aviles to be a credible witness and we may not, based upon this record, alter that conclusion. *See id.*

As to appellant's contention that Aviles's decision to arrest appellant was not due to the facts and circumstances observed by the officer, but rather, was a result of Aviles's preconceived determination that appellant was intoxicated, we note that this contention is entirely premised on appellant's perception of Aviles's subjective belief. However, instead of the subjective belief of the arresting officer, we must review the question of probable cause based upon an objective standard. *See Pringle,* 540 U.S. at 371.

Accordingly, the trial court did not abuse its discretion in denying appellant's motion to suppress the evidence of the initial detention and subsequent arrest of appellant for DWI. *See Turrubiate,* 399 S.W.3d at 150. Appellant's first issue is overruled.

13

Search Warrant

Applicable Law

The fact that the magistrate who issued the search warrant for appellant's blood is not a licensed attorney is undisputed. Accordingly, we are dealing with the trial court's application of the law to the facts and will review the trial court's decision *de novo. See id.* at 147. Further, we note that the ultimate issue will be controlled by our construction of article 18.01 of the Texas Code of Criminal Procedure. *See* art. 18.01 (West Supp. 2014). Statutory construction is a question of law. *State v. Vasilas,* 187 S.W.3d 486, 488 (Tex. Crim. App. 2006).

The non-consensual extraction of blood from a person implicates the privacy rights of the individual and is, therefore, protected by the Fourth Amendment to the United States Constitution. *See Schmerber v. California,* 384 U.S. 757, 768-69, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Such protection is also recognized in the Texas Constitution. TEX. CONST. art. I, § 9; *see also Escamilla v. State,* 556 S.W.2d 796, 798 (Tex. Crim. App. 1977).

The issuance of a search warrant is governed by Chapter 18 of the Texas Code of Criminal Procedure. The issuance of an evidentiary search warrant is governed by art. 18.02(10). *See* art. 18.02(10) (West Supp. 2014); *see also Clay v. State,* 391 S.W.3d 94, 97 (Tex. Crim. App. 2013) (holding that an evidentiary search warrant may issue for the extraction of blood). Article 18.01 contains several provisions governing who may issue search warrants. *See* art. 18.01.

At issue before the Court are the provisions of article 18.01(i) and (j). The State contends that the facts of this case are controlled by subsection (i), while appellant states that the issue will be decided by application of subsection (j). Thus, we are required to construe the statute.

Article 18.01(i) provides:

(i) In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable to a subsequent warrant under Subdivision (10) of Article 18.02 of this code.

Article 18.01(j) provides:

(j) Any magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who:

 (1) is arrested for an offense under Section 49.04 . . . Penal Code; and

 (2) refuses to submit to a breath or blood alcohol test.

Parties' Contentions

The State contends that a justice of the peace is a magistrate as defined by statute. *See* art. 2.09 (West Supp. 2014). However, a justice of the peace is not one of the magistrates permitted to sign an evidentiary search warrant, *see* art. 18.02(10), pursuant to article 18.01(c). *See* art. 18.01(c). Further, Bailey County has no magistrates listed in article 18.01(c) who are licensed attorneys, other than the district judge. Therefore, according to the State's theory, the exception delineated in article

15

18.01(i) is applicable.  The State contends that the plain language of the statute leads to this conclusion.

Appellant, however, contends that the plain language of the entirety of article 18.01 leads to a different conclusion.  Appellant points out that the plain language of article 18.01(j) permits "[a]ny magistrate who is an attorney licensed by this state" to issue a search warrant to seize blood; however, the requirement to be a licensed attorney would exclude Justice of the Peace Redwine.  Therefore, appellant contends the warrant at issue was not proper.

Analysis

The different contentions of appellant and the State require this Court to construe the statute at issue.  In so doing, we are required to give effect to the literal text unless the meaning of the statute is ambiguous or the plain meaning leads to an absurd result that the legislature could not have intended.  *See Chiarini v. State,* 442 S.W.3d 318, 320 (Tex. Crim. App. 2014) (citing *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991)).  Further, we must seek to effectuate the intent or purposes of the legislators who enacted the legislation.  *See Vasilas*, 187 S.W.3d at 488.

To properly analyze the question before the Court, we must begin with the basics.  Article 2.09 provides a rather extensive list of whom, among the numerous listed officials, are considered to be magistrates.  *See* art. 2.09.  Search warrants may be signed by a magistrate.  See art. 18.01(a).  However, certain specific types of warrants, like evidentiary warrants issued pursuant to article 18.02(10), may only be

16

issued by certain specified magistrates. *See* art. 18.01(c). Yet, the same provision that limits who may issue a search warrant also contains the exceptions at issue. *See id.*

The plain language of article 18.01(i) tells us that, if a county does not have a municipal judge who is a licensed attorney, a county judge who is a licensed attorney, or a statutory county judge, then, in that situation, any magistrate may issue a search warrant under article 18.02(10). *See* art. 18.01(i). This version of article 18.01(i) was passed in 2007. *See* Act of May 15, 2007, 80th Leg., R.S., ch. 355, 2007 Tex. Gen. Laws 652. Very clearly, there can be no misunderstanding about the direction of the legislature in such a situation. The legislature was clearly trying to ease the burden on rural counties by expanding the list of magistrates who could issue article 18.02(10) search warrants. *See Muniz v. State*, 264 S.W.3d 392, 398 (Tex. App.—Houston [1[st] Dist.] 2008, no pet.) (construing the prior version of article 18.01(i)). The plain language is clear and unambiguous. *See Chiarini,* 442 S.W.3d at 320.

Turning to the second provision at issue, article 18.01(j), we find that the statute says that any magistrate who is a licensed attorney may issue an article 18.01(10) search warrant to collect a specimen of blood when a citizen is accused of one of the intoxication offenses listed and has refused to give a specimen of breath or blood. *See* art. 18.01(j). This subsection of article 18.01 was passed in 2009. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1348, 2009 Tex. Gen. Laws 4262-65. When read alone, this provision clearly states that any magistrate who happens to be a licensed attorney in the State of Texas may sign a blood draw search warrant.

17

Appellant contends that subsection (j) acts as a limitation on subsection (i). The thrust of appellant's position is that, after granting the rural counties the opportunity to utilize their magistrates when they did not have any who qualified to sign a search warrant issued under article 18.02(10), the legislature subsequently withdrew that authority by passing subsection (j). Under appellant's theory, the **only** magistrate who may sign a search warrant for seizure of blood is a magistrate who has a law license.

To come to this conclusion, appellant must, by necessity, substitute the word "only" for the word "any." Any is the first word of this provision and, as used, is an adjective used to indicate a person or thing that is not particular or specific. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 97 (3rd ed. 1976). On the other hand, only is an adjective meaning alone in a class or category; existing with no other or others of the same kind. *See id.* at 1577. Thus, under appellant's theory, we have gone from expanding the number of magistrates available to restricting the number of magistrates available. Appellant contends that this is what the legislature had in mind when it passed subsection (j) in 2009. This is so, according to appellant, because a blood draw is such an invasive matter, as recognized by the United States Supreme Court decision in *Schmerber*. *See* Schmerber*,* 384 U.S. at 768-69. However, the only requirement of *Schmerber* is that the prerequisites of the Fourth Amendment to the Constitution be met prior to the collection of any blood specimen. *See id.* at 771.

As opposed to appellant's contentions, our reading of subsection (j) leads us to conclude that it is clear and not ambiguous. *See Chiarini,* 442 S.W.3d at 320. Very clearly, the statute says that any magistrate who is a licensed attorney can sign a warrant to draw a blood specimen. Further, the two provisions at issue can be

reconciled to effectuate the purpose for which they were enacted. *See Vasilas*, 187 S.W.3d at 488.

Simply put, subsection (c) of article 18.01 limits the magistrates who may sign search warrants. It is also clear that the passage of subsection (i) of article 18.01 was intended to expand the number of magistrates who could sign warrants in rural areas where there were none of the magistrates listed in subsection (c) to be found. *See Muniz*, 264 S.W.3d at 398. By passing the exception in subsection (j), it is this Court's view that the legislature was intending to expand, not contract, the number of magistrates available to sign search warrants for blood. Very consciously, the legislature used the term "any" in crafting this statute. Thus, it is apparent that the legislature wanted more magistrates available to review search warrants for blood, not less. This interpretation of the two provisions effectuates and harmonizes the statute so that all portions of the statute may be given effect. *See* TEX. GOV'T CODE ANN. § 311.021 (West 2013); *Clinton v. State,* 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (holding that to determine the collective intent of the legislature in passing legislation, we look first to the literal text).

Finally, despite the position of appellant, we do not find that such an interpretation of the statute creates an absurd result. Instead, it would be appellant's position that would create an absurd result. Under the interpretation suggested by appellant, the legislature would have to be presumed to have intended to undo the exception granted by subsection (i) to the prohibitions of subsection (c) when it passed subsection (j). Such a result is an absurd result for it violates the very basic principal

19

that we assume the legislature intended the entire statute to be effective. *See* TEX. GOV'T CODE ANN. § 311.021; *Clinton,* 354 S.W.3d at 800.

We therefore conclude that Redwine, acting in her capacity as a magistrate pursuant to the exception of subsection (i), properly signed and issued the search warrant for a specimen of appellant's blood. This means that the trial court did not commit error when it overruled appellant's motion to suppress. Accordingly, appellant's issue to the contrary is overruled.

Conclusion

Having overruled appellant's issues, the trial court's judgment is affirmed.

Mackey K. Hancock
Justice

Publish