**Opinion issued December 17, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

——————————

**NO. 01-18-00919-CV**

———————————

**HONG PHUOC NGO AND DUYEN NGOC DANG, Appellants**

**V.**

**ASSOCIATION OF WOODWIND LAKES HOMEOWNER, INC., Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-38662**

---

**DISSENTING OPINION**

The pre-amendment TCPA is a beast that, from the start, has been in need of a corral, if not a cage. But this result goes beyond any permissible interpretation of the statutory term "common" or the related right of association; therefore, I respectfully dissent.

When the first TCPA cases began to work their way through the appellate process—less than ten years ago—courts gaped at the expansive language of the statute but dutifully explained that it was not the judiciary's role to interpret an extremely broad statute in a restrictive way. *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). It was the Legislature's job to craft a statute that accomplished what it had intended. And it was the judiciary's job to apply the ordinary meaning of the words chosen by the Legislature. This, we did.

Predictably, word of the expansiveness of the statute spread, and litigants began filing TCPA dismissal motions in cases arising under virtually every area of the law, at times when there was only a wisp of public participation involved. There have been TCPA motions filed in cases involving complex commercial litigation, theft of intellectual property, damages for criminal acts, discipline of lawyers, and family law disputes. And the courts have held that the TCPA, indeed, applied, relying on the broad wording of the statute.

At times, judges have called on the Legislature to amend the statute so that its tentacles would no longer reach into every imaginable area of law and so that the ever-growing number of TCPA interlocutory appeals would no longer burden the appellate courts' caseload. *See, e.g.*, *Serafine v. Blunt*, 466 S.W.3d 352, 364–65 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring).

The Legislature eventually amended the TCPA, but before that amendment came into effect, the Texas Supreme Court reimagined the reach of the statute and became more stringent in its analysis of whether defendants seeking the protections of the TCPA were exercising the rights defined in the statute. *Compare Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127 (Tex. 2019) (interpreting the TCPA more strictly than in past cases to conclude that private communications argued to implicate the TCPA free-speech protections had to have public relevance beyond the pecuniary interests of the private parties involved), *with ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (more freely accepting that the TCPA applied broadly to private communications).

Around the same time, an intermediate appellate court held that a "common" interest no longer meant common to the parties involved; it must be common to the public at large, so that two tortfeasors who join together no longer triggered the TCPA's right of association. *Compare Kawcak v. Antero Resources Corp.*, 582 S.W.3d 566, 569 (Tex. App.—Fort Worth 2019, pet. denied), *with Elite Auto Body LLC v. Autocraft Bodywerks, Inc*., 520 S.W.3d 191, 198–206 (Tex. App.—Austin 2017, pet. dism'd) (relying heavily on Texas Supreme Court precedent to hold that alleged tortfeasors' theft of trade secrets triggered the right of association under the TCPA).

Soon after *Kawcak*, this Court was called on to decide whether another set of tortfeasors met the pre-amendment TCPA's right-of-association standard. We noted that *Kawcak* involved only two tortfeasors and that the case before us involved five. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 473 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc). And we further noted that "*Kawcak* left unanswered whether allegations of three or more tortfeasors acting together . . . for their own benefits fit[ ] the definition of 'common.'" *Id.* We held they did not. *Id.* at 475–76.

We interpreted the TCPA term "common" as "of or relating to a community at large: public" and held that the tortfeasors' "conduct and communications, involved in misappropriating [a former employer's] trade secrets and conspiring to commit related torts, benefitted only the five alleged tortfeasors," did not relate to "any public or community interests," and, thus, did not trigger the TCPA right-of-association protection. *Id.* I joined that decision, fully agreeing that a group of ex-employees accused of tortiously using trade secrets were not exercising the statutory right of association in the TCPA.

In my view, interpreting the TCPA right of association to exclude tortfeasors furthering their own pecuniary interests reaches the limit of how the judiciary can and should corral this statute. The *Gaskamp* holding focused on the terms of the statute, though interpreting them more narrowly with increased scrutiny of the express purposes the statute was intended to serve. *See id.*; *see also Newpark Mats*

*& Integrated Servs., LLC v. Cahoon Enters., LLC*, 605 S.W.3d 671, 677, 679–80 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (after noting that TCPA balances protected rights against plaintiffs' ability to pursue litigation to right a wrong, holding that private business dispute with no public or community interest did not trigger TCPA right of association). For any additional restraint, we must wait for the cases to arrive that will be decided under the Legislature's 2019 amendments that narrowed the TCPA's scope.

Instead, the majority has chosen to aggressively apply *Gaskamp* to declare that members of an actual association—a neighborhood association—are not exercising their right of association. This goes too far. *See* Amy Bresnen, et al., *Targeting the Texas Citizen Participation Act: The 2019 Texas Legislature's Amendments to a Most Consequential Law*, 52 St. Mary's L.J. 1, 6 (2020) (listing a conflict between neighborhood association and city over development as example of strategic lawsuit against public participation). We should not justify an absurd reading of a statute to achieve a result, even if it is a result that we suspect the Legislature now might support. *See Creative Oil & Gas*, 591 S.W.3d at 133. And we must be mindful of how the majority's result could be applied in future cases. In its desire to starve the beast of the TCPA, the majority holds that a whole neighborhood does not qualify as "public." But a neighborhood association is a form of small self-government. *See In re Keenan*, 501 S.W.3d 74, 75–76 (Tex. 2016); *Inwood North*

5

*Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 633–634 (Tex. 1987). If a neighborhood association is not "public" under the TCPA, nothing prevents a statewide association or a nationwide association from oppressing public participation through the legal system. It is always possible to note those outside a group and declare that the group is not large or public enough. If every dispute, no matter the nature or how many people are involved, can be viewed as a private matter implicating only private economic interests, the TCPA becomes hollow.

And contrary to the majority's assertion, the property-enjoyment interests at stake here are not merely economic; they are non-economic as well, as is much of what neighborhood associations regulate. *See Chiarini v. State*, 442 S.W.3d 318, 319 (Tex. Crim. App. 2014) (legal right to possess firearms in common area); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 196–97 (Tex. 1995) (security of residents in common areas). Regardless, even economic issues can have dramatic effects on public participation. *Shelley v. Kraemer*, 334 U.S. 1, 4 (1948) (suit to enforce restrictive covenants excluding property ownership or occupancy by "any person not of the Caucasian race").

*Gaskamp* held that tortfeasors acting in their pecuniary interests do not implicate the TCPA right of association. *Gaskamp*, 596 S.W.3d at 476. That holding does not dictate the result here. The majority opinion goes too far in holding that a neighborhood association's collective action to "enforce" its restrictions "for the

6

common benefit" of its members along with the members' responsive communication to and among the association and related conduct do not "involve any manner of public or citizen participation." This interpretation is at odds with the words of the statute.

I would hold that the TCPA applies to the Association's suit against the Ngos and was in response to the exercise of their right of association. I would conclude, on this record, that the Association failed to point to any breach by the Ngos of their deed restrictions and was thus unable to meet its burden of making a prima facie case for each element of its breach-of-contract claim. Because I believe the majority stretches *Gaskamp* beyond what the statutory language of the TCPA will bear, I respectfully dissent.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

Justice Landau, dissenting.