NO. __PD–0261–15__

# IN THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

DANIEL ZALMAN, Appellant

v.

THE STATE OF TEXAS, Appellee

## DEFENDANT'S PETITION FOR DISCRECTIONARY REVIEW

Manske & Manske
Richard L. Manske
SBN:12956500
Colleen M. Manske
SBN: 24072966
121 E. Monseratte
El Campo, Texas 77437
Telephone (979)543-6832
Telecopier(979)543-5300

David Kiatta
SBN: 11377750
9800 Centre Pkwy Suite 240
Houston, Texas 77036

ATTORNEYS FOR DANIEL ZALMAN

**APPELLANT REQUEST ORAL ARGUMENT**

kwiktag ®    066 544 864

# TABLE OF CONTENTS

Index of Authorities...................................................................................3

Statement Regarding Oral Argument..............................................................4

Statement of the Case................................................................................4

Statement of Procedural History...................................................................5

Questions for Review.................................................................................5

> 1) *Did the Court of Appeals correctly hold that Wharton County is not required to follow Tex. Code Crim. Proc. Sect. 18.01(j) that require magistrates with a Texas law license to sign blood search warrants after a citizen refusal of breath or blood request?*
>
> 2) *Did the Court of Appeals correctly hold that the Appellant's Fourth Amendment rights were not violated when his blood draw occurred in a room filled with large insects?*

Argument................................................................................................5

Request for Relief....................................................................................13

Certificate of Service...............................................................................14

Appendix (Majority Opinion of Thirteenth Court of Appeals, February 5, 2015)

# INDEX OF AUTHORITIES

## UNITED STATES CONSTITUTION

U.S. Const. Amend. IV.................................................................13,21,22,24,31,33,36,39

## FEDERAL CASES

*Schmerber v. United States*, 384 U.S. 769-70 (1966)...............................................9,13

## TEXAS CASES

*Amador v. State* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).....................................10

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991)..........................................6

*Castro v. State*, 227 S.W.3d 737 (Tex. Crim. App. 2007) ............................................ 11

*Clay v. State*, 391 S.W.3d 94 (Tex. Crim. App. 2013) ................................................ 9

*Ex parte Davis*, 412 S.W.2d 46 (Tex. Crim. App. 1966) ......................................... 10, 31

*Laney v. State*, 117 S.W.3d 854 (Tex. Crim. App. 2003) ............................................ 11

*Saenz v. State*, 842 S.W.2d 286 (Tex. Crim. App. 1992) ............................................ 11

*Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006)...........................................6

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011) ............................... 10,11,13

## STATUTES

Tex. Code Crim. Pro. Ch. 18...............................................................7,8,9,10

NO. PD-0261-15

# IN THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

DANIEL ZALMAN, Appellant

v.

THE STATE OF TEXAS, Appellee

## DEFENDANT'S PETITION FOR DISCRECTIONARY REVIEW

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is helpful in the cause to clarify the unusual facts and respond to questions that concern the implications of this opinion. Thus, the Appellant requests oral argument.

## STATEMENT OF THE CASE

Daniel Zalman, Appellant was convicted of driving while intoxicated on December 8, 2010. Appellant, appealed his conviction on four issues and the Court of Appeals affirmed his conviction on February 5, 2015.

4

# STATEMENT OF PROCEDURAL HISTORY

A jury found Daniel Zalman guilty of driving while intoxicated and the trial court assessed a punishment of probation (one-hundred eighty days jail/probated to one year) and a fine of five hundred dollars. After losing his motion for a new trial appeal from this Court in 2014, Mr. Zalman appealed his conviction to the Thirteenth Court of Appeals. The appeals court upheld his conviction after he presented four issues on appeal. See *Appendix (Ct. App. Op.)*.

Mr. Zalman did not file a motion for rehearing. Mr. Zalman now files his petition for discretionary review on only two issues after thirty days from the court of appeals judgment because this Court granted an extension of time to file.

# QUESTIONS FOR REVIEW

I.  Did the Court of Appeals correctly hold that Wharton County is not required to follow Tex. Code Crim. Proc. Sect. 18.01(j) that requires magistrates with a Texas law license to sign blood search warrants after a person's refusal of breath or blood request?

II. Did the Court of Appeals correctly hold that the Appellant's Fourth Amendment rights were not violated when his blood draw occurred in a room filled with large insects?

# ARGUMENT

## I.

"The meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning." *Boykin*, 818 S.W.2d 782 (Tex.

Crim. Cr. App. 1991) quoting *Smith v. State,* 789 S.W.2d 590, 592 (Tex. Cr. App. 1990). "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Boykin,* 818 S.W.2d 782, *Coit v. State,* 808 S.W.2d 473, 475 *(Tex. Cr. App. 1991) (quoting Ex parte Davis,* 412 S.W.2d at 52 (Tx Cr. App 1967). Furthermore, "If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history." *Boykin,* 818 S.W.2d 782.

The Texas Code of Criminal Procedure Chapter 18, Search Warrants 18.01(c), states:

> A search warrant may not be issued under Article 18.02(10) unless the sworn affidavit required by Subsection (b) sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. *Except as provided by Subsections (d), (i), and (j),* only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal

6

Appeals, including the presiding judge, or a justice of the Supreme Court of Texas, including the chief justice, may issue warrants under Article 18.02(10).

Article 18.01(j) states that, "Any magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who:

    I.  Is arrested for an offense under 49.04, 49.045, 49.05, 49.06, 49.065, 49.07 or 49.08;
    I.  And Refuses to submit to a breath or blood alcohol test

The 81st Texas Legislature enacted Art.18.01(j) effective on September 1, 2009. TEX. CODE CRIM. PROC. ANN. art. 18.01(j) (West, Westlaw through 2013 3d C.S.).

The only judge in Wharton County with a Texas law license is the district court judge and he serves only Wharton County.

The State argued and the court of appeals agreed that 18.01(i) applies to Wharton County. TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (West, Westlaw through 2013 3d C.S.). The court of appeals stated that, "To read subsection (j) as restricting which magistrates may issue a warrant to obtain a blood specimen essentially requires us to substitute "only" for "any" in the text of the statute." *(Ct. App. Op. at 3-4).* TEX. CODE CRIM. PROC. ANN. art. 18.01(j) (West, Westlaw through 2013 3d C.S.).

7

Thus, the statute would read, "*Only* a magistrate who is an attorney licensed by the state may issue a blood search warrant under Article 18.02(10) to collect a blood specimen from a person who…" Whether the word "any" or "only" is used in the statue the results are the same; That 18.01(i) applies to Wharton County because Wharton County does not have any judges with law licenses listed in (i). TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (West, Westlaw through 2013 3d C.S.).

The two issues not addressed by the court of appeals are: 1) the singling out of *blood warrants* issued for driving while intoxicated within the Code versus other evidentiary warrants and, 2) the importance of blood search warrants being read and signed by a licensed attorney.

If a citizen lived within a county that does not have *any* magistrate with a law license listed in 18.01(i), then *any* magistrate can sign *any* type of evidentiary search warrant[1]. If a citizen lived in a county with a magistrate with a law license, then that citizen's blood warrant would be signed by *any* magistrate with a law license under 18.01(j). TEX. CODE CRIM. PROC. ANN. art. 18.01(i), 18.01(j) (West, Westlaw through 2013 3d C.S.). The end result; if you are a person that lived in a county that

---

[1] 18.01 (i) states that any magistrate may issue a search warrant under Subdivision (10) or (12) or Article 18.02 and this section is not applicable to subsequent search warrants under Subdivision (10). TEX. CODE CRIM. PROC. ANN. art. 18.01(j) (West, Westlaw through 2013 3d C.S.).

fell under 18.01(i) then you are not afforded the added protection of a trained and licensed attorney to evaluate and sign your blood search warrant affidavit. Thus, an absurdity is created within the reading of the two statutes. TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (West, Westlaw through 2013 3d C.S.).

In *Clay v. State*, this Court stated in footnote 7 that, "Since the date of the appellant's arrest, the Legislature has made it explicit that "[a]ny magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.01(10) to collect a blood specimen from a person who . . . is arrested for an offense under Section 49.04. . ., Penal Code; and . . . refuses to submit to a breath or blood alcohol test." Acts 2009, 81st Leg., ch. 1348, § 5, p. 4263, eff. Sept. 1, 2009." *Clay v. State, 391* S.W.3d 94. This Court in its own published case stated blood warrants for DWI's are to be issued under Art. 18.01(j) of the criminal code. TEX. CODE CRIM. PROC. ANN. art. 18.01(j) (West, Westlaw through 2013 3d C.S.).

The court of appeals stated, "We agree that a blood draw implicates especially personal expectations of privacy, but just as with any search, a warrant to collect a blood specimen is simply required to comply with the requirements of the fourth amendment. (citing *Schmerber v. California*, 384 U.S. 757, 768 (1969); *Sanchez v. State*, 365 S.W.3d. 681, 684 (Tex. Crim. App. 2012) (Although a blood draw constitutes a search under the Fourth Amendment, the Constitution will not be offended if the draw occurs pursuant to a valid search warrant."). *Ct. Op. at 9-10.*

The court fails to reconcile and or explain how and why a citizen that lives in a county without a law licensed magistrate listed in 18.01(i) will not be afforded the same protections given to those citizens that live in a county with any law licensed magistrate to sign their blood search warrant, especially when this Court's made it clear in *Clay* that blood search warrants are to be obtained by 18.01(j) per the Texas Legislature. Surely, the Texas Legislature did not add 18.01(j) to protect *only* the masses in counties with law licensed magistrates to sign their blood warrants after they are arrested for driving while intoxicated and refuse to submit to blood or breathe testing. *391* S.W.3d 94.

## II.

The Fourth Amendment protects citizens from unreasonable searches and seizures. In *Johnston*, this Court stated, "[It] is appropriate to invoke traditional Fourth Amendment principles to determine whether a blood draw was performed in a reasonable manner. *Id.* Accordingly, the reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw. *Johnston*, 336 S.W.3d 649, *cf. Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) ("The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer . . . and it requires a consideration of the totality of the circumstances facing the arresting officer . . . ."); *Castro*, 227 S.W.3d at 741 ("A reasonable-

10

suspicion determination is made by considering the totality of the circumstances . . . ."); *Laney v. State*, 117 S.W.3d 854, 862 (Tex. Crim. App. 2003); ("We have used an objective standard of reasonableness in determining whether a warrantless search is justified under the Emergency Doctrine."); *Saenz v. State*, 842 S.W.2d 286, 288 (Tex. Crim. App. 1992) ("The totality of the circumstances surrounding [an investigative detention] are looked to in determining whether the police conduct was reasonable").

The *Johnston* Court continued on and wrote, "The Given the amount of comparative persuasive authority on the subject, we are not convinced that *Schmerber's* reasonable manner requirement acts as a per se bar to blood draws conducted in a non-medical environment. Though a medical environment may be ideal, it does not mean that other settings are unreasonable under the Fourth Amendment. According to our research, reasonableness depends upon whether the environment is a safe place in which to draw blood. "The environment here, according to the evidence in the record, was safe; it was in accordance with accepted medical practices, and therefore did not "invite an unjustified element of personal risk of infection or pain." *Johnston*, 336 S.W.3d 649.

The intoxilyzer room where Mr. Zalman's blood draw occurred (visible on video) contained numerous large insects that crawled on the walls, floor, and Mr. Zalman. (RR Vol. 5 at 104-106). The EMT that took Mr. Zalman's blood testified: Question:

11

"If the sanitary place had a cockroach or a cricket running around on the patient, would that be a sanitary place to you?" Answer: "No". (RR Vol.5 of 9 at 128). The trial record contains the intoxilyzer room video where it is clearly visible there are numerous large insects crawling. There are large insects on the walls, floors and even on Mr. Zalman's arm[2]. Certainly, this this is not an environment in accordance with accepted medical practices.

The court of appeals found that a showing of large insects crawling around a room where medical evidence is being collected was not enough to awaken a citizen's right against an unreasonable search and seizure under the Fourth Amendment because Mr. Zalman failed to show, "How the presence of insects made the blood draw unreasonable." *Ct. of App. Op. at 19.* The court stated, "Appellant has not shown that the insects contaminated Gann's equipment, for example, or touched the injection site during or after the actual blood draw." *Ct. of App. Op. at 19.* Appellant contends that the mere fact of large insects that crawled on him, all over the room, and wherever else that cannot be seen on video leads to unreasonableness under the Fourth Amendment and is certainly not an environment in accordance with accepted medical practices under *Schmerber* or *Johnston.* 384 U.S. 757, 768 (1969); 336, S.W.3d 649.

---

[2] The insect did not crawl on the arm which the blood was taken on video. There is no video of actual blood draw.

12

In *Battles v. Texas*, the defendant raised the issue that the intoxilyzer room was not a sanitary place to draw blood because the DWI program director testified it was not during a pre-trial suppression hearing and during trial. 2014 WL 5475394, (not des. for pub.). The court disagreed and part of their reasoning was because, "The DVD depicting the room showed a tidy room with some scuff marks on the floor but did not reveal any obvious foreign substances on the floor, walls, or desktop. *Id.*

Because the court of appeals dismissed and disregarded the numerous large insects that crawled all over a room and on a defendant before his forced blood draw, Appellant requests this Court to review the standard in which they believe is the threshold for reasonable searches and seizures are under the Fourth Amendment in regards to forced blood draws.

## REQUEST FOR RELIEF

For all these reasons, the Appellant requests this Court to grant his petition or discretionary review and reverse the judgment of the court of appeals; or in the alternative, to remand to the court of appeals for further proceedings consistent with this Court's opinion; and grant all other relief to which the Appellant may be entitled.

Respectfully Submitted,

Richard L. Manske
121 E. Monseratte St.
El Campo, Texas  77437
(979) 543-6832
Bar Card No.  12956500
ATTORNEY FOR APPELLEE

## CERTIFICATE OF SERVICE

By affixing my signature above, I hereby certify that on *April 8* , 2015, a true and correct copy of the foregoing APPELLANT'S BRIEF, was delivered via the United States Postal Service to:

**Mr. Ross Kurtz**
Criminal District Attorney
210 Rusk St.
Wharton, Texas  77488

**Mr. Nathan Woods**
Assistant Criminal District Attorney
100 S. Fulton, Ste. 100
Wharton, Texas   77488

**APPENDIX**



NUMBER 13-13-00471-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DANIEL ZALMAN,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the County Court at Law
of Wharton County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Longoria

By two issues, which we reorganize and will address as four, appellant Daniel

Zalman appeals his conviction for driving while intoxicated, first offense. *See* TEX. PENAL

CODE ANN. § 49.04 (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

### A. Background Facts

On September 13, 2009, Officer Jason Gingles of the El Campo Police Department (Gingles) and Texas Department of Public Safety Trooper Jose Mena (Mena) were working "secondary employment" by providing private security at a Whataburger in the city of El Campo in Wharton County, Texas. That particular Whataburger employed officers on Friday and Saturday nights between 11:00 p.m. and 3:00 a.m. because, in Mena's words, "that's when the bars close on Fridays and Saturday, and a lot of people go to Whataburger" afterwards. At approximately 1:45 a.m., the manager informed both officers that the drive-through line had stopped moving. Both Mena and Gingles testified that they knew from past experience working security at that Whataburger that if the line stopped moving early in the morning, it usually meant that a driver was intoxicated and had lost consciousness.

After exiting the building, the two officers saw an SUV with a male in the driver's seat and a female in the passenger seat. Both officers testified that the driver, appellant, was "slumped over" behind the wheel. Mena, who approached on the driver's side, testified that appellant's eyes were closed. The female passenger, appellant's wife, noticed the two officers approaching and shook appellant by the shoulder. Appellant pulled the car forward until he stopped near where Mena stood on the grass next to the drive-through lane and rolled down the window. Mena asked if appellant was "alright" and appellant responded that he was "fine." Mena testified that he smelled a strong odor of alcohol coming from appellant and observed that his eyes were "red, glassy, [and] bloodshot." Mena asked appellant to step into the backseat of the car so that Mena could

2

drive the car to the parking lot of the business next door, where the two officers planned to perform a DWI investigation. Trooper Mark Contreras (Contreras), who was on duty and exiting the Whataburger at the time, took over the investigation. After observing appellant and requesting that he perform a field sobriety test, Contreras arrested appellant for driving while intoxicated. *See id.*

Following his arrest, appellant refused to provide a breath sample. Contreras applied to Justice of the Peace Cynthia Kubicek for a search warrant to draw a sample of appellant's blood for testing. In the affidavit attached to the application, Contreras stated that "[o]n or about the 13th day of September, 2009, [appellant] did then and there operate a motor vehicle in a public place in Wharton County, Texas while intoxicated." He further stated that Mena "told me that he/she witnessed the suspect operating a motor vehicle in a public place in Wharton County, Texas, shortly before I contacted [appellant]." Contreras stated that he smelled a strong odor of alcoholic beverages coming from appellant and observed that appellant had "red, blood shot and glassy" eyes, slurred speech, failed the Horizontal Gaze Nystagmus field sobriety test, and admitted to Contreras that he had been drinking alcoholic beverages. Judge Kubicek signed a search warrant to draw appellant's blood at 3:09 a.m. on the same day.

Appellant waited in the "Intoxilyzer" room inside the Wharton County Jail while Contreras applied for the warrant. During that time, an insect crawled down appellant's right sleeve. At approximately 3:30 a.m., Emergency Medical Technician Scott Gann (Gann) drew a vial of blood from appellant's left arm. Gann testified that he followed standard procedure for blood draws, including cleaning the injection site with an iodine solution, and using sterile equipment that he obtained from the hospital. Gann also

3

testified that the room appeared sanitary at the time of the blood draw. Contreras testified that the room is routinely cleaned by jail trustees, but that he did not know the time of the last cleaning. Contreras did not see any insects at the time of the blood draw but admitted on cross-examination that he heard crickets chirping in the background on the video of the blood draw.

### B. Legal Background

Appellant filed a pretrial motion to suppress the blood test results on four grounds: (1) Mena and Gingles detained appellant without reasonable suspicion; (2) Contreras's affidavit was insufficient to establish probable cause because it did not include the specific time that Mena and Contreras observed him driving and allegedly displaying signs of intoxication; (3) the blood draw did not occur in a sanitary place as is required by statute; and (4) the search warrant was not signed by a licensed attorney as required by the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(j) (West, Westlaw through 2013 3d C.S.). The trial court granted the motion specifically on the second ground. Three months later, the trial court granted the State's motion to reconsider the previous ruling, withdrew the order suppressing the blood evidence, and denied the motion to suppress. On the same day, the trial court denied a separate motion to suppress that reasserted the first ground. No findings of fact were requested or filed at any time.

The case was tried to a jury, which returned a verdict of guilty. By agreement, the trial judge assessed a sentence of 180 days in county jail, a $500 fine, and court costs, suspended the sentence, and placed appellant on community supervision for twelve

4

months. A visiting judge granted appellant's motion for a new trial.[1] The State appealed, and the Texas Court of Criminal Appeals eventually reversed. *State v. Zalman*, No. 13-11-00115-CR, 2012 WL 3792737 (Tex. App.—Corpus Christi Aug. 31, 2012), *rev'd*, 400 S.W.3d 590, 594–95 (Tex. Crim. App. 2013). Appellant now challenges his conviction on direct appeal.

By four issues, which we have reordered, appellant asserts that the trial court abused its discretion by denying appellant's motions to suppress because: (1) Judge Kubicek had no authority to sign the warrant because she was not a licensed attorney; (2) Mena and Gingles did not possess reasonable suspicion to justify detaining appellant; (3) the affidavit was insufficient to establish probable cause because it did not specify the time when Mena and Contreras observed appellant; and (4) the blood draw was unreasonable because it occurred in an unsanitary place.[2]

## II. MOTION TO SUPPRESS STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We afford almost total deference to the trial judge's determination of historical facts because the judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, the trial court does not issue findings of fact, we imply all

---

[1] The newly-elected judge of the trial court recused himself because appellant and his family contributed to his judicial campaign.

[2] Appellant raised these issues in a "memorandum of law" that he filed in support of his motion for new trial. The Texas Court of Criminal Appeals held that the memorandum was an untimely amendment and that the motion alone was not sufficient to raise these evidentiary issues. *State v. Zalman*, 400 S.W.3d 590, 594–95 (Tex. Crim. App. 2013). The Court emphasized that its holding did not mean that appellant waived any of these issues. *Id.* at 595.

5

necessary findings in support of the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). We review de novo the trial court's application of law to the facts of the case unless the implied findings are also dispositive of the legal issue. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and correct on any applicable theory of law. *Turrubiate*, 399 S.W.3d at 150.

### III. AUTHORITY TO ISSUE THE WARRANT

By his first issue, appellant argues that the court should have granted his motion to suppress because only magistrates who are attorneys licensed in this State may sign a warrant to obtain a blood sample, and Judge Kubicek is not a licensed attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(j). We disagree.

### A. Standard of Review and Applicable Law

Statutory interpretation is a question of law that we review de novo. *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012). When interpreting a statute, courts "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). We begin with the language of the statute and attempt to discern the "fair, objective meaning" of the statutory text at the time of its enactment. *Id.* If the statute's language is clear and unambiguous, we will give effect to its plain meaning unless that interpretation would lead to absurd consequences that the Legislature could not have intended. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We assume that the Legislature chose every word with a purpose, and we attempt to give effect to each word, phrase, clause, and sentence in

6

the law if reasonably possible. *Id.* at 172.

The code of criminal procedure authorizes magistrates[3] to issue search warrants for the seizure of "property or other items, except personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (West, Westlaw through 2013 3d C.S.). A blood specimen is an item that may be searched for and seized under article 18.02(10). *Clay v. State*, 391 S.W.3d 94, 97 n.7 (Tex. Crim. App. 2013); *Thom v. State*, 437 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Only a judge of a municipal court of record who is an attorney licensed in this state, a county court judge who is a licensed Texas attorney, a statutory county court judge, a district court judge, a judge of the Texas Court of Criminal Appeals, a justice of the Supreme Court of Texas, or a magistrate with criminal jurisdiction serving a district court may sign an evidentiary warrant. TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West, Westlaw through 2013 3d C.S.). Justices of the Peace are excluded from this list and generally may not issue warrants pursuant to article 18.02(10). *State v. Acosta*, 99 S.W.3d 301, 303 (Tex. App.—Corpus Christi 2003, pet. ref'd) (en banc). However, in a county that does not have a judge of a municipal court of record who is a licensed attorney, a county court judge who is a licensed attorney, or a statutory county court judge, "any magistrate may issue a search warrant under subdivision (10)" of article 18.02. TEX. CODE CRIM. PROC. ANN. art. 18.01(i) (West, Westlaw through 2013 3d C.S.). And subsection (j) provides: "[a]ny magistrate who is an attorney licensed by this state

---

[3] Justices of the Peace are magistrates under the code of criminal procedure. TEX. CODE CRIM. PROC. ANN. art. 2.09 (West, Westlaw through 2013 3d C.S.).

may issue a search warrant under Article 18.02(10) to collect a blood specimen" from a person who is arrested for driving while intoxicated or other alcohol-related offenses and who refuses to submit to a breath or alcohol test. *Id.* art. 18.01(j).

## B. Discussion

It is undisputed that Wharton County does not have a judge of a municipal court of record who is a licensed attorney, a county court judge who is a licensed attorney, or a statutory county court judge. Appellant argues that whether subsection (i) applies to Wharton County is irrelevant because subsection (j) provides that only magistrates with a law license may sign a search warrant to obtain a blood specimen. Therefore, the warrant is void because Judge Kubicek, a justice of the peace, had no authority to issue it. Appellant reasons that by enacting subsection (i) the Legislature expanded the number of magistrates available to issue evidentiary warrants in certain counties but later took away that power as it applied to warrants to obtain a blood specimen by enacting subsection (j).

We disagree. Appellant is correct that subsection (i) expands the list of magistrates with the authority to issue evidentiary warrants in certain counties. *Barrios v. State*, No. 07-13-00426-CR, ___ S.W.3d. ___, 2014 WL 6836310, at *7 (Tex. App.— Amarillo Dec. 2, 2014, no pet. h.); *see Muniz v. State*, 264 S.W.3d 392, 398 (Tex. App.— Houston [1st Dist.] 2008, no pet.) (interpreting the former version of subsection (i)). Subsection (j) provides that "any" magistrate who is an attorney licensed in this state "may" issue an evidentiary warrant to collect a blood specimen. TEX. CODE CRIM. PROC. ANN. art. 18.01(j). To read subsection (j) as restricting which magistrates may issue a warrant to obtain a blood specimen essentially requires us to substitute "only" for "any" in

8

the text of the statute. The Amarillo Court recently observed that "any," as it is used in subsection (j), "is an adjective used to indicate a person or thing that is not particular or specific." *Barrios*, 2014 WL 6836310, at *8 (internal citations omitted). We must presume that the Legislature chose every word in the statute carefully and for a purpose.[4] *See Dobbs*, 434 S.W.3d at 170. The plain language of subsection (j) is not ambiguous and does not create an absurdity: any magistrate who is also an attorney licensed by this state may sign an evidentiary warrant to obtain a blood specimen whether or not the magistrate is located in a county where subsection (i) applies. *Barrios*, 2014 WL 6836310, at *8. This interpretation harmonizes subsections (i) and (j) and gives full effect to each, while appellant's interpretation restricts the reach of subsection (i). *See Dobbs*, 434 S.W.3d at 172 (observing that we must give effect to the entire statute if reasonably possible); *see also Barrios*, 2014 WL 6836310, at *8.

Appellant argues that the Legislature must nevertheless have intended to restrict the authority to issue warrants to obtain a blood specimen because a forced blood draw is an invasion of bodily integrity which "implicates an individual's most personal and deep-rooted expectations of privacy." *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013) (internal quotation marks omitted). We agree that a blood draw implicates especially personal expectations of privacy, but just as with any search, a warrant to collect a blood specimen is simply required to comply with the requirements of the Fourth Amendment. *See id.* (citing *Schmerber v. California*, 384 U.S. 757, 768 (1969)); *Sanchez v. State*, 365

---

[4] If the Legislature wanted to provide that "only" some magistrates may sign certain types of warrants, it knew how to do so and, in fact, did so elsewhere in article 18.01. *Compare* Tex. Code Crim. Proc. Ann. art. 18.01(c) (providing that "only" certain magistrates may sign evidentiary warrants), *and id.* art. 18.01(h) (providing that "only" the same three classes of judges may issue a search warrant for the seizure of contraband), *with id.* art. 18.01(j) (providing that "any" magistrate who is a licensed attorney may issue a search warrant to obtain a blood specimen so long as certain conditions are met).

9

S.W.3d 681, 684 (Tex. Crim. App. 2012) ("Although a blood draw constitutes a search under the Fourth Amendment, the Constitution will not be offended if the draw occurs pursuant to a valid search warrant."). And, in any event, even if we agreed with appellant about the Legislature's intent in enacting the statute, courts must apply the text of an unambiguous statute so long as it does not create an absurdity. *See Dobbs*, 434 S.W.3d at 170.

We conclude that the plain language of subsection (j) does not restrict the power to sign a blood evidence warrant to magistrates who are also Texas-licensed attorneys, but instead identifies one permissible set of magistrates authorized to issue a search warrant for the collection of a blood specimen. It does not restrict the authorization extended by subsection (i), which governs this case. *See Barrios*, 2014 WL 6836310, at **7–8. Because Judge Kubicek had the authority to issue the warrant under subsection (i), we overrule appellant's first issue.

## IV. WHEN WAS APPELLANT DETAINED?

By his second issue, appellant argues that Mena and Gingles lacked reasonable suspicion to detain him because they were not in possession of any facts indicating that he was intoxicated. Appellant's argument presupposes that he was detained as soon as he stopped his car, but the State responds that appellant was not detained until Mena requested that appellant exit the driver's seat, at which time the officers possessed reasonable suspicion to detain him. We agree with the State.

### A. Applicable Law

Courts have recognized three general categories of police-citizen interactions: (1) consensual encounters, which do not implicate the Fourth Amendment; (2) investigatory

10

detentions, which require reasonable suspicion; and (3) arrests, which require probable cause. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (internal footnotes omitted). An officer is just as free as anyone to stop and question a fellow citizen, and the citizen is free to terminate the encounter at will. *Id.*; *see Florida v. Bostick*, 501 U.S. 429, 434 (1991) (observing that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions"). But if an officer detains a citizen through force or a show of authority, the interaction has become an investigative detention that requires reasonable suspicion. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

There is no bright-line rule for determining when an encounter becomes a detention. *Id.* at 667. Instead, courts must look to the totality of the circumstances surrounding the interaction to determine whether a reasonable person would have felt free to terminate the encounter. *Id.* at 667–68. We take into account the time, place, and other circumstances surrounding the interaction, but the most important factor is the officer's conduct. *Castleberry*, 332 S.W.3d at 467. The Texas Court of Criminal Appeals has explained that "[a]t bottom the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'" *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

## B. Discussion

Appellant argues that Mena detained him by commanding him to stop the vehicle and, at the time, Mena and Gingles were not in possession of any facts supporting reasonable suspicion to detain him. Mena and Gingles were only aware that appellant had probably fallen asleep behind the wheel of his car, which appellant asserts is not a

criminal offense. However, Mena did not testify that he commanded appellant to stop the car.[5] By denying the motion to suppress, the trial court impliedly found Mena's testimony to be credible, and we may not disturb this record-supported finding. *See Kelly*, 204 S.W.3d at 819.

A vocal command is not a required element of a seizure, *see Wade*, 422 S.W.3d at 667–68, but when viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we find nothing to indicate that appellant was seized before Mena requested appellant to go to the backseat of the car. Mena and Gingles approached the car, Mena asked appellant a question, and appellant responded. Until this point, neither Mena nor Gingles gave any sign that appellant not was not free to leave.[6] At that time, the interaction was a consensual encounter which required no objective justification. *See Castleberry*, 332 S.W.3d at 466 (observing that a police officer is just as free as anyone to stop and question a fellow citizen). After appellant lowered his window and responded to Mena's question, Mena observed that appellant's eyes were red, glassy, and bloodshot, and he perceived that appellant gave off a strong odor of alcohol. Appellant does not contest that Mena had reasonable suspicion to detain appellant for a DWI

---

[5] The portion of Mena's testimony that appellant cites is as follows:

[Defense Counsel]: But it is clear that you stopped [appellant] as he attempted to pull forward in the drive-through, correct?

[Mena]: He pulled up next to me.

[Defense Counsel]: Okay. Did you order his car to stop or was it Officer Gingles?

[Mena]: No. He stopped, I mean, he just stopped when he got to me because I stepped over to the grass. I was walking up and stepped over to the grass and he stopped when he came up to me. Had he not stopped, I would have stopped him, yes.

[6] Appellant cites to *State v. Griffey* as support that he was detained, but the officer in that case used his police vehicle to block the drive-through lane to prevent the driver, who was reportedly "passed out behind the wheel," from exiting. 241 S.W.3d 700, 702 (Tex. App.—Austin 2007, pet. ref'd).

investigation at that time based on those observations. We accordingly overrule appellant's second issue.

## V. WAS THE AFFIDAVIT SUFFICIENT TO ESTABLISH PROBABLE CAUSE?

By his third issue, appellant argues that the trial court erred in denying his motion to suppress because the facts within the four corners of the affidavit attached to the warrant application were not sufficient to establish probable cause that alcohol would still be present in his bloodstream.

### A. Standard of Review and Applicable Law

Both the federal and state constitutions provide that warrants may not issue except on a showing of probable cause. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Magistrates may issue a warrant only after a peace officer has filed an affidavit "setting forth substantial facts establishing probable cause." TEX. CODE CRIM. PROC. ANN. art. 18.01(b).

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to warrants over warrantless searches. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). We will uphold the magistrate's determination provided that there was a "substantial basis" for concluding that probable cause existed. *Id.* While the "substantial basis" standard does not mean that reviewing courts act as a rubber stamp, it "does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (internal quotation marks omitted).

Probable cause exists when, under the totality of the circumstances, there is at least a "fair probability," or a "substantial chance" that contraband or evidence of a crime will be found at the specified location at the time the warrant issues and the search is executed. *Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011). Neither federal nor Texas law defines precisely what degree of probability is sufficient to establish probable cause, but it cannot be based only on the conclusory statements of the affiant. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). The affidavit must provide sufficient facts to allow the magistrate to make an independent determination of whether probable cause exists to issue a warrant. *Id.* In making this determination, the trial court is limited to the four corners of the affidavit. *Bonds*, 403 S.W.3d at 873. The magistrate interprets the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts contained within the affidavit. *Id.*

Facts brought forth in an affidavit which would ordinarily support probable cause can become "stale" by the passage of time. *Crider*, 352 S.W.3d at 707. To determine whether facts in an affidavit have become stale, courts examine "in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued." *Id.* (internal quotation marks omitted). When, as here, the facts in the affidavit show a single, nonrecurring crime that occurred at a specific location, the question is how long after that time "evidence of that single crime can be expected to remain at the scene." *Id.* at 708. Because alcohol quickly dissipates from a person's bloodstream, facts brought forward to support issuing a warrant to obtain a specimen of blood from a DWI suspect become stale "quite rapidly." *Id.* However, there is no hard rule setting the outer limit of time between the arrest of a

14

DWI suspect and the time when there is no longer a substantial basis to believe that evidence of intoxication could probably be found in the suspect's blood. *Id.* at 707.

## B. Discussion

Trooper Contreras alleged in his affidavit that "[o]n or about the 13th day of September, 2009, [appellant] did then and there operate a motor vehicle in a public place in Wharton County, Texas while intoxicated." The affidavit did not include the specific time when Trooper Contreras allegedly observed appellant exhibiting signs of intoxication or when Trooper Mena allegedly observed him operating a vehicle while intoxicated. Appellant reasons that in light of these deficiencies, the judge must have improperly looked outside the affidavit to conclude that the facts alleged therein were not stale.[7]

We disagree. The Texas Court of Criminal Appeals decided a case with similar facts in *State v. Jordan*, 342 S.W.3d 565, 567 (Tex. Crim. App. 2011). In that case, the arresting officer presented an affidavit in which he stated that he had reason to believe that the suspect committed the offense of driving while intoxicated "on or about" June 6, 2008. *Id.* The officer applied for the warrant in the "early morning hours" of the same day. *Id.* The affidavit detailed observations by other police officers that the defendant drove the wrong way down a one-way street and exhibited various other signs of intoxication, but did not specify the date and time of those observations. *Id.* at 567–68. The magistrate signed the warrant at 3:54 a.m. on June 6, 2008. *Id.* at 568. The Texas Court of Criminal Appeals reasoned that under the facts and circumstances of the case,

---

[7] Appellant also argues that affidavit was insufficient because it "failed to include the existence of an informer, what time the officers were informed, and what the informer told the officers," but the affidavit alleged that Mena informed Contreras that he witnessed appellant operating a vehicle while intoxicated. Appellant further argues that the affidavit was insufficient because it did not give the location of the Whataburger within Wharton County, but appellant does not explain why supplying the exact location where these events allegedly occurred was necessary to establish probable cause in this particular case.

15

the affidavit's introductory statement alleging that the offense occurred on "June 6, 2008" gave the magistrate a substantial basis to infer that the officers also observed the elements of the offense on June 6, 2008. *Id.* at 570–71. By comparison, in *Crider*, the Court concluded that there was no probable cause when the gap between the arrest of the allegedly-intoxicated driver and the signing of the warrant could have been as long as twenty-five hours. 352 S.W.3d at 710.

Contreras's affidavit is similar to the one filed in *Jordan*. He alleged that appellant committed an offense on or about September 13, 2009 and described Mena's observations as well as his own, but did not specifically state at what hour these observations occurred. Contreras swore the affidavit in the early morning of the same date on which he alleged in the affidavit that appellant committed the offense, and the magistrate signed and issued the warrant at 3:09 a.m. The time that elapsed between the arrest and the signing of the warrant was, at most, three hours and nine minutes, less than the four hours approved by the Court in *Jordan*. *See* 342 S.W.3d at 570–71. Under the specific facts and circumstances of this case, we conclude that the magistrate had a substantial basis to infer that the observations of Mena and Contreras in the affidavit also occurred on September 13, 2009.[8] *See id.* We overrule appellant's third issue.

## VI. WAS THE BLOOD DRAW CONDUCTED IN AN UNREASONABLE MANNER?

By his fourth issue, appellant argues that trial court should have granted his motion to suppress because his blood was drawn in a room "covered in insects" in violation of

---

[8] We emphasize that our holding does not mean that a similar affidavit submitted on the same day as an arrest, even one shortly after the arrest, is necessarily sufficient to establish probable cause. As the Texas Court of Criminal Appeals observed in *Crider*: "[t]he ultimate criteria in determining the evaporation of probable cause are not found in case law, but in reason and common sense." *Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011). We hold only that under the particular facts and circumstances of this case, the magistrate had a sufficient basis to determine that probable cause existed to issue a search warrant to obtain a blood specimen from this particular appellant.

16

his constitutional right against unreasonable searches and seizures and the statutory requirement that a blood sample "must be taken in a sanitary place." Tex. Transp. Code Ann. § 724.017(a-1) (West, Westlaw through 2013 3d C.S.). We disagree.

## A. Applicable Law

When a blood draw is conducted pursuant to a warrant, chapter 724 of the transportation code is inapplicable because consent, implied or otherwise, is irrelevant. *State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011); *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (en banc). Assessment of whether a blood draw was reasonable is thus "purely a matter of Fourth Amendment law." *Johnston*, 336 S.W.3d at 661. Making this determination involves a two-part inquiry: (1) whether police were justified in making a defendant submit to a blood draw; and (2) "whether the means and procedures employed in taking [the defendant's] blood respected relevant Fourth Amendment standards of reasonableness." *Schmerber*, 384 U.S. at 768; *accord Johnston*, 336 S.W.3d at 658.

The second inquiry contains two discrete questions: whether the means of testing were reasonable, and whether the "test was performed in a reasonable manner." *Johnston*, 336 S.W.3d at 658. A "venipuncture" blood draw is a presumptively reasonable means of measuring a suspect's blood alcohol content. *Id.* at 660. The defendant bears the burden of rebutting that presumption by presenting evidence of a verifiable medical condition that would make a blood draw from that particular defendant unreasonable. *Id.* We determine whether the test was performed in a reasonable manner on an objective basis in light of the totality of the circumstances surrounding the blood draw. *Id.* at 661.

17

## B. Discussion

Appellant challenges only the second prong of the second part of the *Schmerber* reasonableness test: whether the test was performed in a reasonable manner. Appellant asserts that the presence of insects "in a room [and] that crawled on a person prior to a blood draw for evidentiary purposes [is] at a minimum unreasonable under the circumstances and present[ed] an unjustified risk of infection to" appellant.

The Fourth Amendment does not require that a blood draw occur in a medical environment or an ideal one, only that the "environment is a safe place in which to draw blood."[9] *Id.* at 662. Appellant asserts that the presence of insects in the room makes the blood draw unreasonable, but he has provided no evidence that the presence of insects affected the safety of the blood draw or placed him at an unjustified risk of infection or pain. *See Schmerber*, 384 U.S. at 771–72. The one insect that came into contact with appellant did not crawl down the arm used to draw blood, and it was gone by the time of the blood draw. Gann testified that he followed the normal procedure for a blood draw: he used sterile equipment from the hospital, used iodine to clean and sterilize the injection site, and properly bandaged the injection site afterwards. *See Johnston*, 336 S.W.3d at 662–63 (holding the fact that a blood draw performed according to medical practice by a police officer trained as an emergency medical technician supported the reasonableness of the blood draw). Gann also testified that the room appeared sanitary at the time of the blood draw. By overruling appellant's motion to suppress, the trial court impliedly found

---

[9] Because the blood draw in this case was conducted pursuant to a warrant, we need not discuss section 724.017(a-1) of the transportation code any further. *See State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (holding that chapter 724 does not apply to blood draws conducted pursuant to a warrant); *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (en banc) (same); *see also* TEX. R. APP. P. 47.1. And even if chapter 724 did apply to this case, it is not clear that it would afford appellant any greater relief. *See* TEX. TRANSP. CODE ANN. § 724.017 (West, Westlaw through 2013 3d C.S.). The term "sanitary place" is undefined in the statute and there is no case law interpreting it.

18

the testimony of both witnesses to be credible. *See Kelly*, 204 S.W.3d at 819.

While we agree that an environment totally devoid of insects would be an ideal environment in which to draw blood, *Schmerber* does not require an ideal environment, only a safe one. *Johnston*, 336 S.W.3d at 662. Even if we accept that there were multiple crickets present in the Intoxilyzer room at the time of the blood draw, appellant still has not shown how the presence of insects made the blood draw unreasonable. Appellant has not shown that the insects contaminated Gann's equipment, for example, or touched the injection site during or after the actual blood draw. *See id.; see also Martin v. State*, No. 10-10-00426-CR, 2012 WL 3242666, at *3 (Tex. App.—Waco Aug. 9, 2012, pet. ref'd) (mem. op., not designated for publication) (upholding a blood draw conducted in a room at the jail that the nurse drawing blood testified was "relatively sanitary" and where the nurse testified that she used a sterile procedure following accepted medical practice). Because appellant has not shown that the blood draw was performed in a manner that included an "unjustified element of personal risk or infection or pain," *Schmerber*, 384 U.S. at 771–72, we conclude that appellant has not shown that the blood draw was unreasonable. *See Johnston*, 336 S.W.3d at 662. We overrule appellant's fourth issue.

### VII. Conclusion

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
5th day of February, 2015.

19

[Print this page](#)

# Case # PD-0261-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 04/08/2015 04:42:04 PM |
| Case Number | PD-0261-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Richard Manske |
| Firm Name | Manske & Manske PLLC |
| Filed By | Mary Jo Beery |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Manske & Manske PLLC |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Defendant's Petition for Discretionary Review |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
| --- | --- | --- |
| Other | 04/15/2015 12:46:56 PM | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for discretionary review. |

## Documents

| | | |
| --- | --- | --- |
| *Lead Document* | petition for discretionary review.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
| --- | --- | --- | --- | --- | --- |
| Ross Kurtz ztrukssor@gmail.com | District Attorney | EServe | Sent | Yes | 04/08/2015 04:49:11 PM |
| Nathaniel Wood nathaniel.wood@co.wharton.tx.us | Assistant District Attorney | EServe | Sent | Yes | 04/09/2015 08:44:41 AM |